FREDERICK C. LANGONE & others[1] vs. SECRETARY OF THE
COMMONWEALTH & others.[2]

Suffolk. June 29, 1982. — February 16, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Elections,* Political party, Primary. *Primary. Constitutional Law,* Free-
dom of association, Political party, Primary.

Provisions of G. L. c. 53 which prescribe certain requirements to be met
by candidates for office seeking access to a political party's Statewide
primary election ballot did not preclude the members of the party, in
the exercise of their constitutionally protected freedom of association,
from including additional requirements in the party's "charter," pro-
vided that such requirements are consistent with the legislative objec-
tive of a primary election system and do not infringe on the constitu-
tional rights of candidates or voters. [189-194]
A rule of a political party which restricted access to the party's primary
election ballot for each Statewide office to those candidates who re-
ceived at least fifteen percent of the vote cast for that office by the dele-
gates to the party's State convention did not defeat the legislative pur-
pose in providing primary elections, which is the encouragement of
popular participation in the nomination process. [194-196]
The constitutional validity of State action giving effect to a political par-
ty's rule limiting access to its primary election ballot by candidates for
Statewide office was to be judged by whether the State's action was ra-
tionally related to the furtherance of legitimate State interests.
[196-197]
Enforcement by the Secretary of the Commonwealth of a political party's
rule limiting access to its primary election ballot for each Statewide of-
fice to those candidates who received at least fifteen percent of the vote
cast for that office at the party's State convention was rationally
related to the furtherance of State interests in protecting the right of

---

[1] Madeline G. Sarno, Victor Grillo, Louis Ferretti, Gail A. Fasano, re-
ferred to herein as the Langone supporters, The Langone for Lieutenant
Governor Committee, Joel M. Pressman, and plaintiff-intervener, Fran-
cis X. Bellotti, as Attorney General of the Commonwealth.

[2] The Democratic State Committee, Evelyn F. Murphy, Samuel Roton-
di, Louis R. Nickinello, John F. Kerry, and Lois E. Pines.

the party and its members to associate and in maintaining the integrity and stability of existing political parties, and did not abridge the Federal or State constitutional rights of candidates thereby excluded from the primary ballot. [197-200]


CIVIL ACTION commenced in the Superior Court Department on June 2, 1982.

On transfer to the Supreme Judicial Court for the county of Suffolk questions of law were reported by *Liacos, J.*

*James F. Kavanaugh, Jr. (John J. McGivney* with him) for Frederick C. Langone & others.

*Alexander G. Gray, Jr.,* Assistant Attorney General (*Gerald J. Caruso,* Assistant Attorney General, with him) for the Attorney General, intervener.

*David Berman* for Joel M. Pressman.

*John Kenneth Felter (Richard A. Oetheimer & Samuel Hoar* with him) for the Secretary of the Commonwealth.

*James Roosevelt, Jr. (Keith C. Long & James H. Wexler* with him) for Democratic State Committee.

*William Highgas, Jr., Philip A. Chapman, Jr., J. Terence Gillan, & David Milstein,* for the Governor, amicus curiae, submitted a brief.

O'CONNOR, J. Frederick C. Langone, four voters who claimed to be supporters of Langone's candidacy for Lieutenant Governor of the Commonwealth, and The Langone for Lieutenant Governor Committee brought this action in the Superior Court against the Secretary of the Commonwealth. The complaint alleged that, by refusing to print Langone's name on the September 14, 1982, Democratic State party primary ballot as a candidate for the party's nomination for Lieutenant Governor, the Secretary deprived the plaintiffs of various rights provided by statutes of the Commonwealth and guaranteed by the United States and Massachusetts Constitutions. An injunction was sought that would have required the Secretary to place Langone's name on the primary ballot. The other defendants, whose names appeared on the primary ballot, and Joel M. Pressman, as plaintiff, were added to the case on the Secretary's

motion. The Attorney General intervened as a plaintiff and filed a complaint seeking declaratory relief and an order requiring the Secretary to place the names of Langone, Pressman, and "other candidates who have fully complied with all applicable statutory requirements imposed by G. L. c. 53, on the ballot for the state primary for the Democratic Party, notwithstanding any contrary provision of the party charter."

A single justice of this court allowed a joint "Petition for Transfer" to the Supreme Judicial Court for Suffolk County, and on a motion by all the parties, reserved and reported to the full court the following questions of law:

"1. Whether all candidates who have complied with applicable statutory requirements must appear upon the Democratic state primary ballots, notwithstanding the failure to obtain at least fifteen percent of the vote on any ballot of the Democratic Convention pursuant to Article Six, Section III of the 'Charter of the Democratic Party of the Commonwealth'?

"2. Whether the decision by the Secretary of the Commonwealth that he will not place upon the Democratic state primary ballots those candidates who failed to obtain at least fifteen percent of the vote on any ballot of the Democratic Convention pursuant to Article Six, Section III of the 'Charter of the Democratic Party of the Commonwealth', but otherwise complied with the statutory requirements to have their names placed upon the ballots violated the constitutional or statutory rights of the voters, the candidates, or their supporters?"

On July 6, 1982, we issued an order that said "[u]pon consideration of the argument and briefs of the parties, we interpret the State statutes in light of the State and Federal constitutions and rule that the Secretary must give effect to the relevant charter provision. Accordingly, we answer the questions reported, 'No.'" This opinion is an explanation of that order.

On April 23, 1982, the Justices of this court issued an advisory opinion to the Governor. *Opinion of the Justices,*

385 Mass. 1201 (1982). The first sentence of G. L. c. 53, § 44, as amended through St. 1981, c. 278, § 1, states, "The nomination of candidates for nomination at State primaries shall be by nomination papers." There was pending before the Governor for his approval House Bill No. 5852, which would have added, after that sentence, the following sentence: "Notwithstanding the charter, rule or by-law of a political party, any candidate, who is enrolled in such political party, submitting nomination papers subject to the provisions of this chapter shall be a candidate for nomination at the state primary." The proposed language, if constitutional, would have rendered ineffective Article Six, Section III, of the charter of the Democratic party of the Commonwealth of Massachusetts which provides: "There shall be a State Convention in even-numbered years for the purpose of endorsing candidates for statewide offices in those years in which such office is to be filled. Endorsements for statewide office of enrolled Democrats nominated at the Convention shall be by majority vote of the delegates present and voting, with the proviso that any nominee who receives at least 15 percent of the Convention vote on any ballot for a particular office may challenge the Convention endorsement in a State Primary Election." This is popularly known as the 15% rule. The Justices interpreted the proviso to mean that a convention nominee who fails to receive at least 15% of the convention vote on any ballot is not entitled to have his or her name placed on the primary ballot. *Id.* at 1205. The Justices advised the Governor that "[i]f House No. 5852 were approved, G. L. c. 53, § 44, as thereby amended, would abridge the constitutional rights of the Democratic party and its members to associate by allowing candidates to be placed on the Democratic State primary ballot in contravention of the party's charter." *Id.* at 1207-1208.

On May 21 and 22, 1982, the State Democratic party held its convention for the purpose of endorsing its candidates for Statewide office. The defendants Murphy, Rotondi, Kerry, Pines, and Nickinello received at least 15% of the convention vote cast on one or more ballots. The plaintiffs Lan-

gone and Pressman failed to obtain at least 15% of the vote on any ballot. On May 25, 1982, the chairman of the Democratic State Committee sent a certified copy of the party charter to the Secretary and gave him the names of those individuals who had obtained at least 15% of the vote on one or more ballots, and the Secretary released a statement that pursuant to the April 23 *Opinion of the Justices, supra,* he would be unable to place on the State primary ballot the names of Langone and Pressman although they had filed valid nomination papers. On the following day the director of elections sent letters to Langone and Pressman containing the same information. This action was commenced on June 2, 1982.

Candidates of political parties for Statewide office in this Commonwealth are nominated at primaries held for that purpose. G. L. c. 53, §§ 2, 41. General Laws c. 53 provides several requirements for primary ballot access, including requirements that only persons certified as enrolled members of a political party may be candidates for that party's nomination, § 48, and that candidates for the nomination of a political party must file nomination papers containing at least 10,000 certified voter signatures. G. L. c. 53, § 44.[3] General Laws c. 53, § 44, further provides that "[t]he nomination of candidates for nomination at state primaries shall be by nomination papers," and § 2, as appearing in St. 1975, c. 600, § 7, provides that "[n]o candidates shall be nominated . . . in any other manner than is provided in this chapter or chapter fifty-two."[4] These several sections of G. L. c. 53 may reasonably be construed in two ways: as providing the only requirements for primary ballot access, excluding all others, or, in the alternative, as providing minimum requirements for primary ballot access but permitting imposition by the party of additional re-

---

[3] Both Langone and Pressman had complied with the requirements of G. L. c. 53, § 44, by filing nomination papers containing more than 10,000 certified voter signatures.

[4] General Laws c. 52 is irrelevant to the present inquiry.

quirements that are consistent with a primary election system and do not infringe the constitutional rights of candidates and voters. Under the first construction, a candidate who satisfies the express statutory requirements would have a right to the printing of his or her name on the primary ballot. Under the second construction, compliance with the express statutory requirements would not entitle candidates to appear on the ballot in the absence of compliance with the party rule also. If we were to adopt the first construction, we think that G. L. c. 53 would be unconstitutional. However, we think that, since the provisions of G. L. c. 53 are not expressly preemptive, the second construction is permitted by reasonable principles of construction and would avoid constitutional difficulties. Therefore, we adopt it. "It is our duty to construe statutes so as to avoid . . . constitutional difficulties, if reasonable principles of interpretation permit it." *School Comm. of Greenfield* v. *Greenfield Educ. Ass'n*, 385 Mass. 70, 79 (1982). *Staman* v. *Assessors of Chatham*, 351 Mass. 479, 486-487 (1966). We discuss below our reasons for concluding that constitutional considerations require the second construction of G. L. c. 53.

In *Opinion of the Justices*, 385 Mass. at 1204, the Justices stated that the right to associate with the political party of one's choice is an integral part of the freedom of association for the advancement of common political beliefs protected by the First and Fourteenth Amendments to the Constitution of the United States. *Kusper* v. *Pontikes*, 414 U.S. 51, 56-57 (1973). The Justices further stated that there is implicit in that freedom a political party's substantial interest in ensuring that party members have an effective role in determining who will appear on a general election ballot as that party's candidate, citing *Democratic Party of U.S.* v. *Wisconsin*, 450 U.S. 107 (1981). The Justices noted that the winner by a plurality of a party primary in this Commonwealth becomes that party's candidate in the general election, and that voting in the party primary is open both to voters who are enrolled as party members before the primary

and to those who are unenrolled until they request that party's ballot at the polls. G. L. c. 53, § 37. They noted also that the registered voters who sign nomination papers need not be members of the party. G. L. c. 53, § 46. It followed that if the only requirements for primary ballot access were the existing Massachusetts statutory requirements unaugmented by party rule, "a candidate for Statewide election could be placed on the Democratic party ballot and win the primary, thus becoming entitled to be placed on the general election ballot as the Democratic party candidate, with little or no support from the regular party membership." *Id.* at 1205. The Justices concluded that this would substantially infringe the Democratic party's right of freedom of association, *id.* at 1206, and that the Commonwealth's interest in the integrity of the election process does not constitutionally justify elimination of party control over who the party's candidate in the general election will be. *Id.* at 1207.

In answering the questions reported by the single justice in the case before us, we recognized that advisory opinions, "although necessarily the result of judicial examination and deliberation, are advisory in nature, . . . not adjudications by the court, and do not fall within the doctrine of *stare decisis.*" *Commonwealth* v. *Welosky,* 276 Mass. 398, 400, cert. denied, 284 U.S. 684 (1931). "In accordance with our duty, we examine[d] the [questions reported by the single justice] anew, unaffected by the advisory opinion." *Lincoln* v. *Secretary of the Commonwealth,* 326 Mass. 313, 314 (1950). We were aided in that effort by the oral arguments and briefs of the parties. We again concluded that G. L. c. 53 would substantially infringe the Democratic party's fundamental right of association if it eliminated the 15% rule, thus necessitating strict scrutiny, which it does not survive. *Bachrach* v. *Secretary of the Commonwealth,* 382 Mass. 268, 276 (1981). More of an intrusion on the party's fundamental right of association than is required to protect the Commonwealth's compelling interest in the integrity of the election process, *American Party* v. *White,* 415 U.S.

767, 783 (1974); *Kusper* v. *Pontikes,* 414 U.S. 51 (1973), *Rosario* v. *Rockefeller,* 410 U.S. 752 (1973), is not constitutionally permissible. See *Riddell* v. *National Democratic Party,* 508 F.2d 770, 776-778 (5th Cir. 1975). The Commonwealth's interest in the integrity of the election process does not require, and therefore does not permit, preclusion of a party rule that reserves to its convention delegates the right to bar from the party's primary ballot candidates who lack the support of at least 15% of those delegates on any convention ballot.

In *Democratic Party of U.S.* v. *Wisconsin,* 450 U.S. 107 (1981), the United States Supreme Court struck down a State statute that compelled the Democratic party, contrary to national party rules, to seat delegates at its national convention who were bound by the statute to vote on the first ballot in accordance with the results of an open primary. An open primary is one in which any registered voter can participate regardless of party affiliation and without publicly declaring it. The plaintiffs argue that *Democratic Party of U.S.* v. *Wisconsin, supra,* stands only for the proposition that a State may not interfere with the internal affairs of a national political party, such as the naming of the party's delegates to its national convention. We think that the principle enunciated in that case is not so narrow. The Court phrased the question before it as "whether, once Wisconsin has opened its Democratic Presidential preference primary to voters who do not publicly declare their party affiliation, it may then bind the National Party to honor the binding primary results, even though those results were reached in a manner contrary to National Party rules." *Id.* at 120. Reasoning that "the inclusion of persons unaffiliated with a political party may seriously distort its collective decisions — thus impairing the party's essential functions — and that political parties may accordingly protect themselves 'from intrusion by those with adverse political principles,' *Ray* v. *Blair,* 343 U.S. 214, 221-222 [1952]," *id.* at 122, the Court held that "if Wisconsin . . . open[s] its primary, it cannot require that Wisconsin delegates to the

National Party Convention vote there in accordance with the primary results, if to do so would violate Party rules." *Id.* at 126. To be sure, the Court declared that the Wisconsin statute impermissibly interfered with the party's internal affairs, as the plaintiffs point out, but it is significant that the Court's focus was on the nature of the interference, which was the imposition on the party of convention votes for the party's presidential nominee that may not have reflected the choice of party members.

In order to vote at a Massachusetts primary, an unenrolled voter may enroll in a political party at the polling place immediately before voting, and receive that party's ballot. G. L. c. 53, § 37. The voter may become unenrolled again, or change his or her enrollment on the day following the primary. G. L. c. 53, § 38. This section also provides that at primaries a clerk shall make available within the polling place certificates to enable a voter to make such changes. Since these provisions require that party affiliation be publicly declared, the Massachusetts primary is not technically "open" as was the Wisconsin primary in *Democratic Party of U.S.* v. *Wisconsin, supra,* but the availability of party affiliation to unenrolled voters, which can be little more than momentary and may be for a purpose that is entirely inconsistent with, or at least unsupportive of the principles of the party, blurs any meaningful distinction between open and closed primaries. See *Democratic Party of U.S.* v. *Wisconsin, supra* at 133 (Powell, J., with whom Blackmun and Rehnquist, JJ., joined, dissenting). Such affiliation demonstrates neither commitment to, nor acceptance of, the political, social, and economic philosophies and programs for which the party has organized. "[A] political party has a legitimate — indeed, compelling — interest in ensuring that its selection process accurately reflects the collective voice of those who, in *some meaningful sense,* are affiliated with it. Freedom of association would prove an empty guarantee if associations could not limit control over their decisions to those who share the interests and persuasions that underlie the association's being"

(emphasis added). L. Tribe, American Constitutional Law 791 (1978).

Since nomination papers may be signed by unenrolled voters, G. L. c. 53, § 46, and since voters at the primary may have only a tenuous affiliation with the party, c. 53, § 37, if G. L. c. 53 nullifies a party rule requiring that a candidate for nomination have a modicum of support from members with substantial affiliation with the party, it as effectively eliminates that party's control of who its candidates in general elections will be as did the Wisconsin statute held unconstitutional in *Democratic Party of U.S.* v. *Wisconsin, supra.* We view this as a substantial interference with the fundamental rights of association guaranteed to the party and its members by the First and Fourteenth Amendments. Therefore, we reject a construction of G. L. c. 53 that would render ineffective all party rules governing primary ballot access, and we construe the statute as permitting any such rule that neither defeats the purpose of a primary election system nor violates the constitutional rights of candidates or voters.

We turn to a consideration whether a construction of G. L. c. 53 as recognizing the Democratic party's 15% rule would defeat the legislative purpose in providing for primary elections, and we conclude that it would not. The aim of the primary system is the encouragement of wide participation in politics and discouragement of candidate selection by party bosses. *Democratic Party of U.S.* v. *Wisconsin, supra* at 127 (Powell, J., with whom Blackmun and Rehnquist, JJ., joined, dissenting). Popular participation in the candidate selection process is assured by G. L. c. 53, § 44, requiring nomination papers signed by at least 10,000 registered voters, and by c. 53, § 37, which provides that primary votes may be cast by persons who are unenrolled until they go to the polls. This broad citizen participation is not negated by application of the 15% rule. The fact that five candidates for selection as the Democratic party's candidate for Lieutenant Governor received sufficient delegate support to satisfy the party charter requirement warrants

the inference that the selection process was not dominated by party bosses. The 15% rule does not defeat the legislative purpose in adopting a primary system. We need not consider at what point the legislative purpose would be defeated by a different party rule requiring a higher percentage of delegate support.

Primary elections are the creatures of statute and are an integral part of the election process. *United States* v. *Classic*, 313 U.S. 299, 314 (1941). Enforcement by the Commonwealth of the 15% rule is State action and is, therefore, subject to constitutional scrutiny. *Bullock* v. *Carter*, 405 U.S. 134, 140 (1972). *Terry* v. *Adams*, 345 U.S. 461 (1953). *Shelley* v. *Kraemer*, 334 U.S. 1 (1948). *Smith* v. *Allwright*, 321 U.S. 649 (1944). *Nixon* v. *Condon*, 286 U.S. 73 (1932). *Nixon* v. *Herndon*, 273 U.S. 536 (1927). See L. Tribe, American Constitutional Law 787 (1978).[5] For the purpose of evaluating the plaintiffs' claims that the 15% rule violates rights guaranteed to them by the Federal and State Constitutions, we treat the rule as though it were expressly contained in G. L. c. 53. See L. Tribe, American Constitutional Law 790 n.2 (1978).

We have concluded that G. L. c. 53 would violate the constitutional rights of the Democratic party and its members if it were to exclude every form of primary ballot access control by party members with a more substantial party affiliation than is demonstrated by accepting a Democratic party ballot on primary election day. We have also concluded that enforcement of the 15% rule would not defeat the legislative purpose in adopting a primary system. We must further inquire whether G. L. c. 53, as augmented by the 15% rule, would deprive the plaintiff candidates or voters of rights of free speech and association guaranteed to them by the First and Fourteenth Amendments to the Con-

---

[5] We have recently held that the protection of art. 9 of the Massachusetts Declaration of Rights is not from State action alone. *Batchelder* v. *Allied Stores Int'l, Inc., ante* 83, 88 (1983). But since we find State action present, we need not decide whether that case negates the necessity of State action under our State Constitution.

stitution of the United States and arts. 1, 16, and 19 of the Massachusetts Declaration of Rights, or would violate their rights to equal protection secured by the Fourteenth Amendment or their rights to freedom and equality of elections secured by art. 9 of the Declaration of Rights. The same basic issues relative to the United States Constitution must be addressed whether our analysis be in First Amendment or equal protection terms.

The first question to be resolved is whether State enforcement of the 15% rule must withstand strict scrutiny or only a rational basis test. Strict scrutiny is required if the interests asserted by the plaintiffs are fundamental and the infringement of them is substantial. *Bullock* v. *Carter*, 405 U.S. 134, 142-144 (1972). In that event, the 15% rule must serve a compelling State interest with as little infringement as possible in order to be constitutionally permissible. *Bachrach* v. *Secretary of the Commonwealth*, 382 Mass. 268, 276 (1981). On the other hand, if the asserted interests are not fundamental or the impact on them of the 15% rule is not substantial, State enforcement of the rule is constitutional if it is rationally based. *Bullock* v. *Carter, supra.*

Langone and Pressman assert that enforcement of the 15% rule abridges their rights of candidacy, and the Langone supporters and the Langone Committee assert interference with their rights as voters. Although the right to run for public office may not be a fundamental right, see *Bullock* v. *Carter, supra* at 142-143, but see *Mancuso* v. *Loft*, 476 F.2d 187, 195 (1st Cir. 1973), and it clearly is not absolute, *Opinion of the Justices*, 375 Mass. 795, 811 (1978), the right to vote is fundamental, *Harper* v. *Virginia Bd. of Elections*, 383 U.S. 663, 667 (1966); *Reynolds* v. *Sims*, 377 U.S. 533, 561-562 (1964); see *Sears* v. *Secretary of the Commonwealth*, 369 Mass. 392, 399 (1975), and restrictions on the access of candidates to the ballot inevitably have impact on voters' rights. *State Bd. of Elections* v. *Socialist Workers Party*, 440 U.S. 173, 184 (1979). *Lubin* v. *Panish*, 415 U.S. 709 (1974). *Bullock* v. *Carter, supra* at 143. Therefore, we treat the interests asserted by the candidates, as well as those asserted by the voter plaintiffs, as fundamental.

A determination whether the restrictions on primary ballot access resulting from the application of G. L. c. 53, and the 15% rule have a sufficient impact on the plaintiffs' fundamental interests to compel strict scrutiny, requires an examination of that impact "in a realistic light." *Bullock* v. *Carter, supra* at 143. *Clough* v. *Guzzi,* 416 F. Supp. 1057, 1066 (D. Mass. 1976). We are satisfied that the burden on candidacy and voting rights that results from enforcement of the 15% rule is insufficient to warrant strict scrutiny and that the appropriate inquiry is whether the effect of G. L. c. 53, supplemented by the 15% rule, is rationally related to the furtherance of legitimate State interests. See *Storer* v. *Brown,* 415 U.S. 724, 733-736 & n.7 (1974) (statute disqualifying independent candidate who was registered member of any party within one year prior to primary election, valid); *Jenness* v. *Fortson,* 403 U.S. 431 (1971) (independent candidates required to submit petition with signatures of 5% of the eligible voters).

We begin our examination of the impact of the 15% rule with the observation that discrimination between those who gain the support of at least 15% of the convention delegates and those who do not is not invidious. Enforcement of the 15% rule does not deny candidates access to the primary ballot in an unfair way, such as by imposing prohibitive filing fees. See *Bullock* v. *Carter, supra.* Everyone who seeks to have his or her name printed on the Democratic primary ballot has the same opportunity to gather the necessary signatures and convention support. No one is required to obtain a greater percentage of the delegate votes than anyone else. That reasonable opportunity exists to garner the necessary delegate support is demonstrated by the fact that five candidates for the Democratic nomination for Lieutenant Governor did so.

Participation in a primary is not the only route available to the plaintiffs to enable them to associate and express political ideas. *Bachrach* v. *Secretary of the Commonwealth,* 382 Mass. 268 (1981). A candidate for statewide office is entitled to appear on the general ballot as an inde-

pendent by compliance with the provisions of G. L. c. 53, § 6. To the extent, however, that the plaintiffs wish to associate and express their ideas as Democrats, those ideas may be represented by the several candidates who obtained the requisite convention support. Every voter cannot be assured that a candidate to his liking will be on the ballot. *Lubin* v. *Panish, supra* at 716. "So long as the ideas in which a potential candidate and other party members believe can be represented by another candidate, the primary purpose of political association has been served. A candidate may, of course, prefer to be the party nominee, but judicial cognizance of that interest as an element of associational rights would be merely a backdoor way of establishing [an absolute] right to candidacy." Developments in the Law — Elections, 88 Harv. L. Rev. 1111, 1176, 1177 (1975).

Not only does the Commonwealth have a legitimate interest in protecting the constitutional rights of the Democratic party and its members to associate, see *South Carolina* v. *Katzenbach,* 383 U.S. 301, 327 (1966), but it also has a proper interest "in maintaining the integrity and stability of existing political parties, thus encouraging responsible action on their part." *Tansley* v. *Grasso,* 315 F. Supp. 513, 517 (D. Conn. 1970). This interest is served by assuring that candidates who appear on the general election ballot as representatives of the Democratic party are truly representative of the party as demonstrated by the support of at least 15% of the party's convention delegates on one or more convention ballots. "The preservation of the integrity of the various routes to the ballot is a proper State objective." *Opinion of the Justices,* 368 Mass. 819, 823 (1975). We conclude, therefore, that G. L. c. 53, supplemented by the 15% rule, is rationally related to legitimate State interests and does not violate any rights guaranteed to the plaintiffs by the United States Constitution.[6]

---

[6] Langone contends that he had insufficient notice of the requirements for primary ballot access and that therefore his right to due process guar-

Langone *v*. Secretary of the Commonwealth.

Although the plaintiffs claim that State implementation of the 15% rule would violate rights guaranteed to them by arts. 1, 9, 16, and 19 of the Massachusetts Declaration of Rights,[7] they advance no separate reasons, and we are unaware of any, to conclude that the Massachusetts Constitution affords them protection not provided by the First and Fourteenth Amendments of the United States Constitution. We have previously said that the freedoms protected by arts. 16 and 19 are "comparable" to those guaranteed by the First Amendment. *First Nat'l Bank* v. *Attorney Gen.*, 371 Mass. 773, 792 (1977), rev'd on other grounds, 435 U.S. 765 (1978). *Bowe* v. *Secretary of the Commonwealth*, 320 Mass. 230, 249 (1946). The Justices have said that "[t]he Massachusetts Constitution does not refer to primaries as

anteed by the Fourteenth Amendment was violated by the failure of the Secretary to print his name on the primary ballot. This contention is without merit. In December, 1981, the Democratic party issued its "Preliminary Call to Convention," which gave clear notice that the party would be holding its endorsing convention pursuant to Article Six of the party's charter. Any assumption that G. L. c. 53 provided the exclusive requirements for primary ballot access was unwarranted.

[7] These articles of the Massachusetts Declaration of Rights state:

Article 1, as appearing in art. 106 of the Amendments to the Massachusetts Constitution, provides: "All people are born free and equal and have certain natural, essential and unalienable rights; among which may be reckoned the right of enjoying and defending their lives and liberties; that of acquiring, possessing and protecting property; in fine, that of seeking and obtaining their safety and happiness. Equality under the law shall not be denied or abridged because of sex, race, color, creed or national origin."

Article 9 provides: "All elections ought to be free; and all the inhabitants of this Commonwealth, having such qualifications as they shall establish by their frame of government, have an equal right to elect officers, and to be elected, for public employments."

Article 16, as appearing in art. 77 of the Amendments to the Massachusetts Constitution, provides: "The liberty of the press is essential to the security of freedom in a state: it ought not, therefore, to be restrained in this Commonwealth. The right of free speech shall not be abridged."

Article 19 provides: "The people have a right, in an orderly and peaceable manner, to assemble to consult upon the common good: give instructions to their representatives, and to request of the legislative body, by the way of addresses, petitions, or remonstrances, redress of the wrongs done them, and of the grievances they suffer."

such, but concerns itself only with elections." *Opinion of the Justices,* 359 Mass. 775, 776-777 (1971). Even if the Massachusetts Constitution were to apply to primaries because of their effect on general elections, "the right 'to be elected,' preserved in art. 9, is not absolute. It is subject to legislation reasonably necessary to achieve legitimate public objectives." *Opinion of the Justices,* 375 Mass. 795, 811 (1978). See *Opinion of the Justices,* 368 Mass. 819, 823 (1975).

Thus, we have completed the constitutional analysis which requires that we construe G. L. c. 53 not to exclude, but rather, to accommodate the 15% rule. No candidate who fails to obtain at least 15% of the vote on any ballot of the Democratic Convention pursuant to Article Six, Section III, of the "Charter of the Democratic Party of the Commonwealth" must appear on the Democratic State primary ballot. The decision of the Secretary of the Commonwealth to that effect did not violate the constitutional or statutory rights of the voters, candidates, or candidates' supporters.