APRIL 4, 1983

No. 82–927. BELLOTTI, ATTORNEY GENERAL OF MASSA-
CHUSETTS *v.* CONNOLLY, SECRETARY OF THE COMMON-
WEALTH OF MASSACHUSETTS, ET AL.; and
No. 82–936. LANGONE ET AL. *v.* CONNOLLY, SECRETARY
OF THE COMMONWEALTH OF MASSACHUSETTS, ET AL. Ap-
peals from Sup. Jud. Ct. Mass. dismissed for want of jurisdic-
tion. Treating the papers whereon the appeals were taken
as petitions for writs of certiorari, certiorari denied. Re-
ported below: 388 Mass. 185, 446 N. E. 2d 43.

JUSTICE STEVENS, with whom JUSTICE REHNQUIST and
JUSTICE O'CONNOR join, dissenting.

These appeals present substantial, unresolved questions
regarding the accommodation of competing First Amend-
ment values: the interests of would-be candidates and voters
in eligibility for the ballot, and the interests of party mem-
bers in political association without undue governmental in-
trusion. Massachusetts law requires that a person seeking
to be placed on the party primary ballot for a statewide office
must be an enrolled member of that party and must file cer-
tain documents, including nominating papers signed by a
specified number of voters. Mass. Gen. Laws Ann., ch. 53,
§§ 9, 44, 45, and 48 (West Supp. 1982–1983). The statute it-
self contains no other express requirements for access to the
ballot, but the Massachusetts Supreme Judicial Court has
held that these rules are "supplemented by" a rule—the "15%
rule"—adopted by the Massachusetts Democratic Party.
This rule permits an individual to run in the party primary
only if he or she has received 15% of the votes on any ballot at
the state party's convention to endorse candidates, which is
held before the primary. According to the Massachusetts
court, the 15% rule is designed to assure that primary candi-
dates have a "modicum of support from members with sub-
stantial affiliation with the party." *Langone* v. *Secretary*

*of Commonwealth,* 388 Mass. 185, 194, 446 N. E. 2d 43, 47 (1983).

Frederick C. Langone, who wished to be a candidate in the Democratic primary for Lieutenant Governor in 1982, satisfied all of the requirements for ballot eligibility that were expressly set forth in the statute, including the submission of 10,000 certified signatures. Nevertheless, the Secretary of the Commonwealth of Massachusetts excluded him from the primary ballot because he had not obtained at least 15% of the votes cast at the party convention, as the 15% rule required. He filed suit in state court seeking an injunction requiring the Secretary to place his name on the primary ballot. The Attorney General of Massachusetts intervened as a plaintiff and filed a complaint seeking declaratory and injunctive relief. Two questions of law were reserved and reported to the full Supreme Judicial Court of Massachusetts, which rendered its decision in favor of the Secretary's implementation of the statute.

The Massachusetts Supreme Judicial Court construed Chapter 53 to recognize the Democratic Party's 15% rule because it believed that such a construction was required by the United States Constitution in order to avoid an impermissible infringement of the associational rights of party members. It noted that nomination papers may be signed by voters who are not members of the party, and that persons may vote in a party primary even if they have not enrolled in the party until immediately before they vote. Therefore, the court reasoned, additional restrictions serve the political party's "legitimate—indeed, compelling—interest in ensuring that its selection process accurately reflects the collective voice of those who, in *some meaningful sense,* are affiliated with it." *Id.,* at 193, 446 N. E. 2d, at 47. If Chapter 53 were construed to nullify the 15% rule, the Massachusetts court believed that it would "as effectively eliminat[e] that party's control of who its candidates in general elections will be as did the Wisconsin statute held unconstitutional in *Democratic*

*Party of U. S.* v. *Wisconsin* [450 U. S. 107 (1981)]." *Id.*, at 194, 446 N. E. 2d, at 47. That burden would necessitate "strict scrutiny, which it does not survive." *Id.*, at 191, 446 N. E. 2d, at 46. In essence, the Massachusetts court held that the United States Constitution prevents a State from enforcing a statute that gives a place on the primary ballot to any party member who satisfies the State's own eligibility requirements.[1]

The Massachusetts court rejected appellants' contentions that the statute, as construed to recognize the 15% rule, would defeat the legislative purpose in providing for primary elections and would violate the constitutional rights of candidates and voters. It recognized that the First and Fourteenth Amendments of the United States Constitution guarantee the rights of free speech and association of candidates and voters. It further acknowledged that, because the 15% rule was enforced through the State's supervision of the primary election process, the 15% rule should be treated "as though it were expressly contained in G. L. c. 53." *Id.*, at 195, 446 N. E. 2d, at 48. But it concluded that the burden on candidacy and voting rights imposed by enforcement of the 15% rule was insufficient to warrant strict scrutiny. Although the rule restricts access to the primary ballot, it allows each person the same opportunity to gather the neces-

---

[1] The Massachusetts Supreme Judicial Court made this position explicit in a recent advisory opinion to the Governor. A bill pending before the Governor would have provided: "Notwithstanding the charter, rule or by-law of a political party, any candidate, who is enrolled in such political party, submitting nomination papers subject to the provisions of this chapter shall be a candidate for nomination at the state primary." The proposed language would have nullified the 15% rule. According to the court's opinion, the proviso would violate the First and Fourteenth Amendments of the United States Constitution because it would "abridge the constitutional rights of the Democratic party and its members to associate by allowing candidates to be placed on the Democratic State primary ballot in contravention of the party's charter." *Opinion of the Justices,* 385 Mass. 1201, 1207–1208, 434 N. E. 2d 960, 964 (1982).

sary signatures and convention support. In addition, a candidate for statewide office may appear on the general election ballot as an independent. To the extent that voters wish to associate and express their ideas as Democrats, the Massachusetts court reasoned, they could be represented by the several candidates who obtained the requisite convention support. Further, the state court found that the rule was rationally related to the furtherance of legitimate state interests—maintaining the integrity and stability of existing political parties, and assuring that party nominees are "truly representative of the party." *Id.*, at 198, 446 N. E. 2d, at 50.

The appeal in No. 82–927 has been filed by the Attorney General of Massachusetts, seeking to vindicate the State's interest in regulating the primary election ballot; his jurisdictional statement also asserts that the decision below improperly elevates the associational rights of party regulars over those of other party members. The appeal in No. 82–936 has been filed by would-be candidate Langone and several of his supporters, contending, *inter alia*, that enforcement of the 15% rule infringed their fundamental constitutional rights.

The case is properly before this Court on appeal. The Massachusetts Supreme Judicial Court, the highest court in the Commonwealth, expressly construed Chapter 53 "not to exclude, but rather, to accommodate the 15% rule."[2] *Id.*, at

[2] The second question reported by the single Justice to the Supreme Judicial Court asked:

"Whether the decision by the Secretary of the Commonwealth that he will not place upon the Democratic state primary ballots those candidates who failed to obtain at least fifteen percent of the vote on any ballot of the Democratic Convention pursuant to Article Six, Section III of the 'Charter of the Democratic Party of the Commonwealth', but otherwise complied with the statutory requirements to have their names placed upon the ballots violated the constitutional or statutory rights of the voters, the candidate, or their supporters?"

On July 6, 1982, the court issued an order answering this question in the negative. It stated: "Upon consideration of the argument and briefs of the

200, 446 N. E. 2d, at 51. It explained that the statute was to be "augmented" or "supplemented" by the 15% rule and acknowledged that the enforcement of the rule is "State action." "For the purpose of evaluating the plaintiffs' claims that the 15% rule violates rights guaranteed to them by the Federal and State Constitutions," the court wrote, "we treat the rule as though it were expressly contained in G. L. c. 53." *Id.*, at 195, 446 N. E. 2d, at 48. Its opinion then rejected appellants' constitutional challenges to the statute so construed. We therefore have appellate jurisdiction under 28 U. S. C. § 1257(2). See *Perry Education Assn.* v. *Perry Local Educators' Assn.*, *ante*, at 43, n. 5; *Abood* v. *Detroit Board of Education*, 431 U. S. 209, 214–215, and n. 7 (1977) (appellate review of a state-court decision upholding the validity of a state statute authorizing the negotiation of agency shop agreements).

Unquestionably the issues presented by these appeals are substantial. Appellant Bellotti, the Attorney General, asserts the interests of the Commonwealth of Massachusetts in regulating the primary election process. As his jurisdictional statement contends:

> "This case deserves plenary consideration because this issue is of substantial importance to every state which has adopted the primary system as the means by which political parties choose their nominees. The challenged decision can permit the virtual nullification of the primary process; if the parties have the absolute right to set minimum ballot access qualifications, then a state may not be able to retain control of the political process to ensure an open and fair selection of primary candidates." Juris. Statement in No. 82–927, pp. 14–15 (footnote omitted).

---

parties, we interpret the State statutes in light of the State and Federal constitutions and rule that the Secretary must give effect to the relevant charter provision."

In addition, appellant Langone and his supporters seek to vindicate their First Amendment associational and voting rights. We have recognized that these rights extend to candidates and voters in primary elections as well as general elections. See *Bullock* v. *Carter*, 405 U. S. 134 (1972); *Kusper* v. *Pontikes*, 414 U. S. 51 (1973). In this case, Langone satisfied the Commonwealth's express statutory requirements for the primary election ballot. Yet he was excluded by the application of an additional prerequisite imposed by the Democratic Party; his supporters were thereby prevented from associating in support of his candidacy and his ideas in the primary campaign. Of course, our cases also establish that the interests of a would-be candidate and his supporters in ballot access are limited by legitimate state interests. But none of our previous cases has decided whether the interests recognized by the Massachusetts Supreme Judicial Court in this case are sufficient to justify enforcement of the 15% rule to exclude candidates from the ballot.

*Democratic Party of United States* v. *Wisconsin ex rel. La Follette*, 450 U. S. 107 (1981), does not control this case. There this Court rejected Wisconsin's requirement that delegates to the party's Presidential nominating convention, selected in a primary open to nonparty voters, must cast their convention votes in accordance with the primary election results. In our view, the interests advanced by the State—preserving the overall integrity of the electoral process, providing secrecy of the ballot, increasing voter participation in primaries, and preventing harassment of voters—did not justify its substantial intrusion into the associational freedom of members of the National Party. But Wisconsin's requirement constituted a more significant intrusion on the associational rights of party members than the interpretation of the Massachusetts statute rejected by the Supreme Judicial Court under the perceived compulsion of our *Democratic Party* decision. Wisconsin *required* convention delegates to cast their votes for candidates who might have drawn their

support from nonparty members. The results of the party's decisionmaking process might thereby have been distorted. Here, if Chapter 53 nullified the 15% rule, Massachusetts would require only that enrolled party members be given a *chance* to vote for candidates whose nominating papers were signed by some nonparty members and who have drawn less than 15% of the votes at the party convention. If these candidates have only minimal support from the enrolled party members who vote in the primary, they will simply be ignored. Further, Wisconsin's asserted interests were less weighty than those set forth by the Massachusetts Attorney General. Surely the Commonwealth has a significant interest in protecting the First Amendment associational and voting rights of its citizens. Finally, unlike Wisconsin's attempt to control delegates in a nationwide party contest, the Massachusetts rule applies to campaigns for statewide office.[3]

I would note probable jurisdiction in No. 82–936, the appeal by candidate Langone and his supporters, and would hold the appeal in No. 82–927 for resolution in light of our disposition of No. 82–936.[4] After plenary consideration we might decide that the Commonwealth may constitutionally enforce the 15% rule, or we might not; but plainly we should

---

[3] Similarly, our decision in *Cousins* v. *Wigoda*, 419 U. S. 477 (1975), invalidated a state court's determination that, despite a contrary determination by the Credentials Committee, a certain slate of delegates should be seated at the Democratic National Convention in 1972.

[4] Appellants in No. 82–936 assert their own constitutional rights as a candidate and voters. If appellant in No. 82–927, the Attorney General of Massachusetts, is in fact challenging the constitutionality of the statute as construed, he appears to be championing the First and Fourteenth Amendment rights of third parties—candidates and voters—who are capable of presenting their own claims in litigation. His jurisdictional statement may also be read, however, as asserting that the Supreme Judicial Court incorrectly interpreted the constitutional right of freedom of association and as a result unnecessarily required the Commonwealth to enforce the 15% rule. It is not clear that this claim, standing by itself, would be within this Court's appellate jurisdiction, although I believe that it would be sufficiently important to warrant review on certiorari.

not dismiss these appeals for want of a substantial federal question.