# OPINIONS OF THE JUSTICES.

OPINION OF THE JUSTICES TO THE HOUSE
OF REPRESENTATIVES.

*Primary. Constitutional Law,* Elections. *Elections.*

Pending legislation providing that "[n]o person may be nominated for any office to be filled at a state election or a city or town election following a city or town primary as an independent candidate if he has been enrolled as a member of a political party . . . during the twenty-eight days prior to the last day for filing nomination papers" promotes the integrity of the State's political system, protects the truly independent candidate, and its enactment would not unconstitutionally impair the right established by art. 9 of the Declaration of Rights of the Massachusetts Constitution of all inhabitants of the Commonwealth "to be elected" to public office. [822-823]

On July 29, 1975, the Justices submitted the following answer to a question propounded to them by the House of Representatives.

To the Honorable the House of Representatives of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit this answer to the question set forth in an order adopted by the House on May 19, 1975, and transmitted to us on May 22, 1975. The order recites the pendency before the General Court of a bill, Senate No. 1782, a copy of which was transmitted with the order. The bill is entitled, "An Act regulating the nomination of certain independent candidates to public office."

The order recites that the bill "would require that all 'independent' candidates for public elective office in a state, or city or town election not be enrolled members of a

political party at least twenty-eight days prior to the last date for filing nomination papers . . .." The bill, which would amend two sections of G. L. c. 53, reads as follows:

"SECTION 1. Section 6 of chapter 53 of the General Laws, as most recently amended by chapter 849 of the Acts of 1973, is hereby further amended by adding the following paragraph:

"No person may be nominated for any office to be filled at a state election or a city or town election following a city or town primary as an independent candidate if he has been enrolled as a member of a political party, as defined in section one of chapter fifty, during the twenty-eight days prior to the last day for filing nomination papers with the state secretary as provided in section ten.

"SECTION 2. Section 48 of said chapter 53 is hereby amended by adding the following paragraph:

"The name of a candidate for election to any office who is nominated otherwise than by a political party, generally referred to as an independent candidate shall not be printed on the ballot at a state election, or on the ballot at any city or town election following a city or town primary, unless a certificate from the registrars of voters of the city or town wherein such person is a registered voter, certifying that he is not enrolled as a member of any political party, is filed with the state secretary on or before the last day herein provided for filing nomination papers. Said registrars shall issue such a certificate forthwith upon request of any such unenrolled candidate or his authorized representative. No such certificate shall be issued to any such candidate who shall have been an enrolled member of any political party twenty-eight days prior to the last day for filing nomination papers with the state secretary as provided by this section."

The question propounded is:

"Would the enactment of Senate, No. 1782 . . . be an unconstitutional impairment of the equal right of all

inhabitants to elected office under the provisions of Article IX of the Bill of Rights of the Constitution of the Commonwealth of Massachusetts?"


By public announcement on May 22, 1975, this court invited briefs from all interested parties. A brief in support of the constitutionality of the bill was submitted by Senator Robert A. Hall of Lunenburg. No brief in opposition was received.

Article 9 of the Declaration of Rights of the Constitution of the Commonwealth provides that "[a]ll elections ought to be free; and all the inhabitants of this Commonwealth, having such qualifications as they shall establish by their frame of government, have an equal right to elect officers, and to be elected, for public employments."

In *Opinion of the Justices,* 359 Mass. 775, 777 (1971), the Justices said that "[e]xcept where the Constitution makes express provision, the Legislature has broad powers to deal with elections." The question asked of us refers only to the State Constitution. Any question under the Federal Constitution seems to have been disposed of in *Storer* v. *Brown,* 415 U. S. 724 (1974).

The scope of art. 9 has not been considered extensively in reported decisions in this Commonwealth. See *Bowe* v. *Secretary of the Commonwealth,* 320 Mass. 230, 248 (1946). In *Moore* v. *Election Commrs. of Cambridge,* 309 Mass. 303, 325 (1941), the court said of art. 9 that "[i]t is obvious, however, that the primary, if not the exclusive, purpose of this provision is to guarantee equality among all . . . [qualified] voters." The court has sustained statutes which reasonably regulate elections and access to a place on the ballot. *Graham* v. *Roberts,* 200 Mass. 152, 156 (1908) (ballot position limited to two persons who win preliminary election). See *Ashley* v. *Superior Court,* 228 Mass. 63, 78 (1917), app. dism. sub nom. *Ashley* v. *Wait,* 250 U. S. 652 (1919); *Opinion of the Justices,* 240 Mass. 611, 614 (1922); *Wood* v. *Election Commrs. of Cambridge,* 269 Mass. 67,

69-70 (1929); *Abbene* v. *Election Commrs. of Revere*, 348 Mass. 247, 250 (1964). See also *Socialist Wkrs. Party* v. *Davoren*, 378 F. Supp. 1245, 1249 (D. Mass. 1974).

The question is whether the purposes of Senate No. 1782 reasonably justify barring an independent candidate from the ballot if he was a member of a political party within twenty-eight days of the last day for filing nomination papers. For reasons already expressed by the Supreme Court of the United States in like circumstances, we believe that Senate No. 1782 adequately meets the requirements of art. 9. In *Storer* v. *Brown*, 415 U. S. 724 (1974), the Supreme Court considered a statute similar to but more restrictive than Senate No. 1782 and said of its purposes (at 735-736): "The State's general policy is to have contending forces within the party employ the primary campaign and primary election to finally settle their differences. The general election ballot is reserved for major struggles; it is not a forum for continuing intraparty feuds. . . . [The statute] protects the direct primary process by refusing to recognize independent candidates who do not make early plans to leave a party and take the alternative course to the ballot. It works against independent candidacies prompted by short-range political goals, pique, or personal quarrel. It is also a substantial barrier to a party fielding an 'independent' candidate to capture and bleed off votes in the general election that might well go to another party. A State need not take the course California has, but California apparently believes with the founding fathers that splintered parties and unrestrained factionalism may do significant damage to the fabric of government. See The Federalist, No. 10 (Madison). It appears obvious to us that the one-year disaffiliation provision furthers the State's interest in the stability of its political system. We also consider that interest as not only permissible, but compelling and as outweighing the interest the candidate and his supporters may have in making a late rather than an early decision to seek independent ballot status." See *Williams* v.

*Tucker*, 382 F. Supp. 381, 387-388 (M. D. Pa. 1974); *Mississippi State Bd. of Election Commrs.* v. *Meredith*, 301 So. 2d 571, 573 (Miss. 1974).

We conclude that the proposed act is reasonably necessary to achieve these legitimate legislative goals. The preservation of the integrity of various routes to the ballot is a proper State objective. *Jenness* v. *Fortson*, 403 U. S. 431, 442 (1971). *Bullock* v. *Carter*, 405 U. S. 134, 145 (1972). *Lubin* v. *Panish*, 415 U. S. 709, 712-715 (1974). *Storer* v. *Brown*, 415 U. S. at 730, 733, 736. The means selected by the Legislature in Senate No. 1782 are reasonably tailored to that purpose. Compare *Rosario* v. *Rockefeller*, 410 U. S. 752 (1973), with *Kusper* v. *Pontikes*, 414 U. S. 51 (1973).

The restrictions on independents contained in Senate No. 1782 are no greater than those imposed on members of political parties. Under G. L. c. 53, § 48, a party member who wishes to run as the nominee of another party must reregister at least one year before the last day for filing nomination papers. And under G. L. c. 53, § 38, a party member who wishes to vote in another party's primary must cancel his party registration at least twenty-eight days before the primary election. Provisions similar to these two statutes were approved in *Storer* v. *Brown*, 415 U. S. 724, 733-734 (1974), and *Rosario* v. *Rockefeller*, 410 U. S. 752, 757 (1973), respectively. Senate No. 1782 does not, therefore, discriminate against independent candidates. On the contrary, it tends to protect the true independent from the confusion and ballot congestion caused by party defectors who masquerade as independents in order to avoid the inconvenience or jeopardy of a party primary.

The answer to the question propounded is, "No."

G. Joseph Tauro
Paul C. Reardon
Francis J. Quirico
Robert Braucher
Edward F. Hennessey
Benjamin Kaplan
Herbert P. Wilkins