HELEN METROS & another[1] *vs.* SECRETARY OF THE
COMMONWEALTH & others[2].

Middlesex.  September 12, 1985. — November 6, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Moot Question.  Practice, Civil,* Moot case.  *Constitutional Law,* Elections.
  *Elections,* Primary.

This court, notwithstanding the fact that the plaintiffs' claims had been
  rendered moot by the occurrence of the 1984 general election, considered
  a challenge to the constitutionality of statutes prohibiting a person who
  has been a member of a political party within the ninety days preceding
  the last day for filing nomination papers from being listed on the ballot
  as an "unenrolled," or independent, candidate for election, where the
  public issues presented were "capable of repetition, yet evading review."
  [159-160]
Provisions of G. L. c. 53, §§ 6 and 48, which prohibit a person who has been
  a member of a political party within the ninety days preceding the last
  day for filing nomination papers from being listed on the ballot as an
  "unenrolled," or independent, candidate for election, did not unconstitu-
  tionally restrict a voter's freedom of association by denying her the
  opportunity to vote for the candidate of her choice. [161]
Provisions of G. L. c. 53, §§ 6 and 48, which prohibit a person who has been
  enrolled as a member of a political party within the ninety days preceding
  the last day for filing nomination papers from being listed on the ballot
  as an "unenrolled," or independent, candidate for election, did not un-
  constitutionally burden a prospective candidate's equal protection rights
  and freedom of association guaranteed to her by the Federal Constitution.
  [161-163]
Statutes providing that a primary election shall be open only to enrolled
  members of a political party did not violate an unenrolled voter's Federal
  constitutional rights of association and to the equal protection of the
  laws. [164-165]

CIVIL ACTION commenced in the Superior Court Department
on August 16, 1984.

[1] Gertrude McEleny.
[2] Registrars of voters for the town of Arlington.

The case was heard by *George W. Cashman,* J., sitting under statutory authority.

The Supreme Judicial Court, on its own initiative, transferred the case from the Appeals Court.

*Mark G. Miliotis* for the plaintiffs.

*Alexander G. Gray, Jr.,* Assistant Attorney General, for the defendants.

LIACOS, J. This case involves a challenge to the Massachusetts election laws that prohibit a person who has been a member of a political party within the preceding ninety days from being listed on the ballot as an "unenrolled," or independent, candidate for election. The plaintiffs are Helen Metros, who wished to be listed on the November, 1984, ballot as an independent candidate for the State Senate, and Gertrude McEleny, a supporter of Metros. The plaintiffs brought an action for injunctive and declaratory relief to require the Secretary of the Commonwealth to place Metros's name on the ballot. The case was heard in the Superior Court in Middlesex County on stipulated facts. The judge dismissed the action, and the plaintiffs (1) appealed, and (2) moved in the Appeals Court for a stay of judgment and for injunctive relief pending appeal. A single justice of the Appeals Court denied the plaintiffs' motion. The plaintiffs appealed the order of the single justice, and the appeals were consolidated.[3] We transferred the case to this court on our own motion.

We summarize the stipulated facts. Helen Metros was an unenrolled registered voter in the town of Arlington prior to March 13, 1984.[4] On that date, Metros voted in the Democratic party presidential primary election. On March 14, 1984, she

---

[3] No additional issue is raised by the appeal from the order of a single justice of the Appeals Court.

[4] Voting lists maintained by the boards of registrars contain the political party enrollment of voters. Those who have not enrolled in a party are "unenrolled" and may not vote in a party primary election unless they enroll in that party. G. L. c. 53, § 37 (1984 ed.). Enrollment of unenrolled voters may take place at the polls. A voter wishing to change parties must do so at least twenty-eight days before a State or presidential primary election and at least twenty days before a special State primary or a city or town primary. G. L. c. 53, § 38 (1984 ed.).

changed her enrollment from Democrat to unenrolled. On May 29, 1984, seventy-seven days after the Democratic party presidential primary, Metros filed her nomination papers as an independent candidate for the office of State Senator. She met all the qualifications to have her name printed on the ballot, except for the requirement that she obtain from the Arlington registrars of voters a certificate that she was not enrolled as a member of any political party during the preceding ninety days.[5] The registrars were prohibited by statute from issuing the certificate because of Metros's enrollment in the Democratic party on March 13, 1984.

The plaintiffs argue that the Massachusetts statutes infringe several of their constitutional rights. (1) McEleny claims that she was denied her right of association because she could not cast her vote for the candidate of her choice. (2) Metros claims that the law places an unconstitutional condition — relinquishing her constitutional right to seek elective office — on the

___

[5] General Laws c. 53, § 48 (1984 ed.), prevents one who is not a member of a party from being listed as a candidate for the nomination of that party, as well as prohibiting one who is a party member from seeking election as an unenrolled candidate. The text of the portion of the statute applicable to unenrolled candidates follows: "The name of a candidate for election to any office who is nominated otherwise than by a political party, generally referred to as an 'Unenrolled' candidate, shall not be printed on the ballot at a state election, or on the ballot at any city or town election following a city or town primary, unless a certificate from the registrars of voters of the city or town wherein such person is a registered voter, certifying that he is not enrolled as a member of any political party, is filed with the state secretary or city or town clerk on or before the last day herein provided for filing nomination papers. Said registrars shall issue each certificate forthwith upon request of any such candidate who is not a member of a political party or his authorized representative. No such certificate shall be issued to any such candidate who shall have been an enrolled member of any political party ninety days prior to the last day for filing nomination papers as provided by this section."

Also, G. L. c. 53, § 6 (1984 ed.), provides in part: "No person may be nominated as an unenrolled candidate for any office to be filled at a state election . . . if he has been enrolled as a member of a political party . . . during the ninety days prior to the last day for filing nomination papers as provided in section ten."

As to the right of a qualified candidate to be designated on the ballot as an "Independent" rather than merely "Unenrolled," see *Bachrach* v. *Secretary of the Commonwealth,* 382 Mass. 268 (1981).

exercise of her constitutional right to vote in a party primary election. This limitation, Metros alleges, unconstitutionally forced her to choose between her right to associate with the Democratic party to participate in the party's selection of a presidential candidate and her right to associate with others to pursue election herself as a candidate not affiliated with a party. (3) Finally, Metros claims that she was denied equal protection of the laws because she, unlike any other unenrolled voter, was impermissibly burdened by the requirement that she give up her right to seek office as an unenrolled candidate in order to vote in the Democratic party presidential primary; and, unlike any other Democratic party candidate, she was burdened by the requirement that she give up her right to have her name appear on the ballot in order to vote in the Democratic party presidential primary.

1. *Mootness.* Before reaching the plaintiffs' arguments, we must consider whether the case presents a live issue for adjudication. The November, 1984, election has long since passed. Metros and McEleny can no longer be granted the relief they sought. It is the general rule that courts decide only actual controversies. We follow that rule, and normally we do not decide moot cases. *Monteiro* v. *Selectmen of Falmouth,* 328 Mass. 391, 392-393 (1952). *Sullivan* v. *Secretary of the Commonwealth,* 233 Mass. 543, 546 (1919). There are, of course, exceptions to the general rule. We may choose to express our opinion on moot questions because of the public interest involved and the uncertainty and confusion that exist. *Wellesley College* v. *Attorney Gen.,* 313 Mass. 722, 731 (1943). Additionally, an exception to the mootness doctrine is that the issue is "capable of repetition, yet evading review." *Southern Pac. Terminal Co.* v. *ICC,* 219 U.S. 498, 515 (1911). We have taken the same view, and we may answer a moot question "likely . . . to arise again in similar factual circumstances . . . where appellate review could not be obtained before the recurring question would again be moot." *Lockhart* v. *Attorney Gen.,* 390 Mass. 780, 783 (1984) (collecting mootness cases). In *Lockhart,* we declined to exercise our discretion to answer a moot question. The plaintiffs there had been denied the

opportunity to gather signatures for an initiative petition. We noted that the future circumstances of a similar initiative and changes in legislation made any future recurrence speculative, and that, if the issues were to reappear, "they need not evade review before they become moot." *Id.* at 785.

Here the circumstances are not so speculative. The Massachusetts statutes prescribe the last Tuesday in May as the deadline for filing nomination papers for the office of State Senator, among others. G. L. c. 53, § 48 (1984 ed.). The statutes also set the date of the presidential primary on the second Tuesday in March in presidential election years. G. L. c. 53, § 28 (1984 ed.). Between those two dates, the greatest possible number of days is eighty-four. As long as a ninety-day disaffiliation period applies, voting in the partisan presidential primary in March will disqualify an intended unaffiliated candidate whose nomination papers are due in May. The question is not unlikely to arise again.

A similar problem came before the United States Supreme Court in *Moore* v. *Ogilvie,* 394 U.S. 814 (1969). The complainants in *Moore* were independent candidates for positions as presidential electors who were denied listing on the ballot because of an Illinois statutory provision. When the case reached the Supreme Court, the issue of mootness was raised. The Court stated that "while the 1968 election is over, the burden . . . on the nomination of candidates for statewide offices remains and controls future elections, as long as Illinois maintains her present system as she has done since 1935. The problem is therefore 'capable of repetition, yet evading review,' *Southern Pac. Terminal Co.* v. *ICC,* 219 U.S. 498, 515 [1911]. The need for its resolution thus reflects a continuing controversy . . . ." *Id.* at 816. The case at bar is closely analogous to *Moore,* and under the doctrines of *Wellesley College, supra,* and *Lockhart, supra,* we choose to address it today.[6]

---

[6] A single justice of the Appeals Court denied the plaintiffs' motion for relief from the order of the trial court and application for stay of the judgment and for the granting of an injunction pending appeal of the judgment of the

2. *The voter's claim*. McEleny has asserted that her right to associate with (by voting for) the candidate of her choice has been denied. While this may be true, we are not persuaded that this result has been brought about by unconstitutional means. In *Lubin* v. *Panish*, 415 U.S. 709 (1974), a challenge to candidate filing fees, the Court stated: "It is to be expected that a voter hopes to find on the ballot a candidate who comes near to reflecting his policy preferences on contemporary issues. This does not mean that every voter can be assured that a candidate to his liking will be on the ballot . . . ." *Lubin, supra* at 716. The process of qualifying candidates may be constitutionally restricted to party primaries for party candidates and an alternative method for independent candidates. *Jenness* v. *Fortson*, 403 U.S. 431, 438 (1971). McEleny may, of course, write in the name of the candidate of her choice if that person has not qualified for the ballot. G. L. c. 54, § 42 (1984 ed.).

3. *Storer v. Brown*. The defendants urge that the decision of the United States Supreme Court in *Storer* v. *Brown*, 415 U.S. 724 (1974), is dispositive of the plaintiffs' claims. The California Elections Code provisions challenged in *Storer* provided that the name of an independent candidate for office could not be printed on the ballot if that candidate had voted in the immediately preceding party primary election at which a candidate was nominated for the office he sought, Cal. Elec. Code § 6830 (c) (Supp. 1974),[7] or if the independent candidate had been registered as a member of a political party at any time during the twelve months preceding the primary election, Cal. Elec. Code § 6830 (d) (Supp. 1974). Two of the plaintiffs were registered Democrats, one until January and the other until March, 1972. This party affiliation disqualified them from

trial judge. The plaintiffs' appeal of the order of the single justice is moot, as the plaintiffs sought by that motion and application specific relief to allow Metros's name to be printed on the 1984 ballot pending appeal of the judgment of the trial judge. That specific interlocutory relief cannot be granted, and the issue cannot rise again.

[7] Section 6830 was repealed by 1982 Cal. Stat. c. 144, § 1. A similar provision is now contained in Cal. Elec. Code § 6920 (Supp. 1985).

a ballot listing as independent candidates for the United States Congress under § 6830 (d) (Supp. 1974). They challenged the constitutionality of the statute, claiming that it infringed their rights guaranteed by the First and Fourteenth Amendments to the United States Constitution. The Supreme Court held the statutory restrictions permissible. It found that the State's interests in the stability of its political system were compelling. Those interests outweighed the interests of the independent candidate in choosing not to disaffiliate from the party until less than twelve months before the primary election. *Id.* at 736. The statute furthered the stability of the political system by limiting ballot access to those who have qualified through either the partisan or nonpartisan route, and by preventing "candidacies prompted by short-range political goals, pique, or personal quarrel." *Id.* at 735.

The Justices previously have considered *Storer's* applicability to the restrictions of G. L. c. 53, § 48, prior to its amendment[8] in 1977. In *Opinion of the Justices,* 368 Mass. 819, 822-823 (1975), the Justices answered a question propounded by the House of Representatives on the constitutionality of a twenty-eight-day party disaffiliation period for independent candidates. Relying in part on the decision of the United States Supreme Court in *Storer,* the Justices opined that the disaffiliation requirement would not violate the rights of independent candidates under art. 9 of the Declaration of Rights of the Constitution of the Commonwealth. It was the opinion of the Justices that the Massachusetts twenty-eight-day disaffiliation period "tend[ed] to protect the true independent from the confusion and ballot congestion caused by party defectors who masquerade as independents in order to avoid the inconvenience or jeopardy of a party primary." *Opinion of the Justices, supra* at 823. The difference between the statutory twenty-eight-day provision examined there and the ninety-day period now part of the statute is not great enough to distinguish the present

---

[8] Prior to 1977, the statute mandated a twenty-eight-day period of party disaffiliation for qualification as an unenrolled candidate. In 1977, the period was extended to ninety days. St. 1977, c. 546.

statute from that considered by the Justices in 1975. While we acknowledge that such an opinion is not binding precedent, after examining the question anew we see no reason to depart from the views there expressed. *Langone* v. *Secretary of the Commonwealth,* 388 Mass. 185, 191, appeal dismissed, 460 U.S. 1057 (1983).

The California provision upheld in *Storer* was more restric-tive than the Massachusetts twenty-eight-day (now ninety-day) restriction. The plaintiffs would distinguish *Storer* from their case, finding differences in the interests asserted by the chal-lengers of the California law. In particular, the plaintiffs assert that the State's interests were weighed against the independent candidates' rights to seek elective office in *Storer,* not against the right to vote, of which Metros claims she was deprived.

Metros fails to convince us of the distinction. She was not deprived of her opportunity to vote in the Democratic party primary election, and in fact voted as a Democrat in that elec-tion. She was denied a place on the ballot as an unaffiliated candidate because she had been affiliated with a party within the prohibited time period clearly set forth in the statute. Two of the plaintiffs in *Storer* had been registered Democrats who were statutorily disqualified from ballot status as independent candidates because of their party affiliation within the time period set forth in the California statute. There is no significant distinction. Metros's claim of infringement of her rights of association and equal protection have been disposed of by the opinion of the United States Supreme Court in *Storer* to the extent that her arguments are based on the Federal Constitution. While we have left open the question whether arts. 1, 9, and 16 of the Massachusetts Declaration of Rights may provide a different standard than the First and Fourteenth Amendments to the Federal Constitution, *Bachrach* v. *Secretary of the Com-monwealth,* 382 Mass. 268, 273-274 n.12 (1981), the plaintiffs advance "no separate reasons, and we are unaware of any, to conclude that the Massachusetts Constitution affords them pro-tection not provided by the First and Fourteenth Amendments of the United States Constitution." *Langone* v. *Secretary of the Commonwealth, supra* at 199.

4. *The closed primary*. Metros frames her arguments so as to assert her right as an unaffiliated voter to vote in the Democratic party primary election. Though she publicly and formally enrolled as a member of the Democratic party, she seeks to minimize the significance of her acts. Her real objection seems to be to the "closed" primary held in Massachusetts.[9] "This right [to vote in primary elections]," she claims, "is burdened by the requirement that a qualified citizen must publicly declare her membership in a political party before being granted access to the primary franchise."

A closed primary protects the rights of association of the members of the political party. See Note, Primary Elections and the Collective Right of Freedom of Association, 94 Yale L.J. 117 (1984). The Supreme Court of the United States has held that closed party primaries do not violate the constitutional rights of otherwise eligible voters not members of the party. *Rodriguez* v. *Popular Democratic Party,* 457 U.S. 1, 14 (1982) (no violation of rights of association or equal protection in procedure to fill vacant seat in Puerto Rico House of Representatives by primary election open only to members of deceased legislator's party). See *Nader* v. *Schaffer,* 417 F. Supp. 837,

---

[9] Closed primaries deny any but party members the right to vote. Open primaries permit voting by those who are not party members. Massachusetts conducts closed primaries. General Laws c. 53, § 37, provides:

> "The voting lists used at primaries shall contain the party enrollment of the voters whose names appear thereon . . . . [A] voter desiring to vote in a primary shall give his name . . . to one of the ballot clerks, who shall distinctly announce the same, and, if the party enrolment of such voter is shown on the voting list, the name of the party in which he is enrolled. If the party enrolment of the voter is not shown on the voting list he shall be asked by the ballot clerk with which political party he desires to be enrolled, and the ballot clerk, upon reply, shall distinctly announce the name of such political party and shall record the voter's selection upon the voting list. The ballot clerk shall then give the voter one ballot of the political party in which he is thus enrolled."

While we discuss Metros's claim in terms of a "closed" primary, we note that in Massachusetts the provisions of G. L. c. 53, §§ 37 and 38, "blur[ ] any meaningful distinction between open and closed primaries." *Langone, supra* at 193.

847 (D. Conn.) (three-judge court) (State may legitimately condition participation in party nominating process on showing of loyalty to the party), *aff'd mem.* 429 U.S. 989 (1976). Metros has been denied no protected right.

5. *Summary.* Metros chose to join the Democratic party. A benefit of that choice was her opportunity to participate in the nominating process of the party. A burden of that choice was her disqualification from seeking office as a candidate unaffiliated with that party. As noted by the judge of the Superior Court, "she wants the benefits of being an independent and a Democrat at the same time." This she cannot have. The appeal from the order of the single justice of the Appeals Court is to be dismissed. The judgment of dismissal is vacated, and a judgment declaring the rights of the parties is to be entered. See *Cherkes* v. *Westport,* 393 Mass. 9, 12 (1984); *Gorman* v. *New Bedford,* 383 Mass. 57, 62 (1981). The matter is remanded to the Superior Court for entry of à judgment declaring the rights of the parties in a manner consistent with this opinion.

*So ordered.*