Giles, J.
Introduction
This matter involves a dispute over disciplinary action taken by the Boston Public Schools (“Boston Public”) in response to a threat made by Juan P., a special education student at Brighton High School (“Brighton H.S.”). After hearings on the matter, Boston Public temporarily suspended the student and decided to exclude him from attending the high school’s prom and graduation ceremony. The student’s mother requested an expedited hearing with the Bureau of Special Education Appeals (the “Bureau”) for the limited purpose of determining whether her son had the right to attend the school’s graduation ceremony. As a result of that hearing, the Bureau determined that he did; and it ordered Boston Public to allow Juan P. to attend the ceremony. The graduation ceremony occurred without incident.
The City of Boston (“plaintiff’) has appealed the matter to this court pursuant to G.L.c. 30A, and the parties now seek judgment on the pleadings pursuant to Mass.RCiv.P. 12(c) and Superior Court Modified Standing Order 1-96(4). After a well-argued hearing on this matter and review of the submissions of counsel, this court ALLOWS judgment in favor of the plaintiff and VACATES the Bureau’s decision.
Background
A. Factual History
The administrative record reveals the following relevant facts. Juan P. was a high school student who attended school within the Boston public school system. He had transferred between English High School and Hyde Park High School on “safety transfers,” because the schools had concerns over whether they could provide for his safely after his reported involvement in some racial issues. In September of 2000, Juan P. began attending Brighton H.S.
While at Brighton H.S., Juan P. was found to have specific learning disabilities in reading comprehension and math computation. On January 18, 2001, Leon J. Monnin, Ph.D. (“Dr. Monnin”), performed a psychological assessment of Juan P. as part of the development process for an Individualized Education Plan (“IEP”) for him. Dr. Monnin’s report stated that Juan P. identified a history of behavioral problems and academic deficiencies. He noted that Juan P. reported feeling that he was “the most hated kid” in the building and that black and Hispanic students alienated him because of his German and Native American ancestry. Dr. Monnin concluded that Juan P. had significant emotional vulnerabilities and explained that
[h]e had difficulty in perceiving things the same as others might see them. He appeared very reactive to affective stimulation and tended to distort under stress. He misrepresented events in his life and described himself as being hated by his peers. He was at high risk of alienating others in his environment and felt that his peers were out to harm him.
As a result of a January 31, 2001 ‘Team”[1] meeting, Juan P. began receiving special education services under his IEP. The IEP called for a “small group setting with 1:1 instruction/assistance, practice repetition, frequent oral direction, cooperative learning, positive reenforcement, preferential seating and detailed task analysis with a multi-sensory approach to address a specific mild learning disability.” The IEP also focused on developing Juan P.’s social and emotional skills. *83 There is no dispute as to the boy’s entitlement to those services.
Dr. Monnin’s report also recommended that Juan P. receive counseling. His mother agreed but requested that his IEP not include the counseling recommendation. Beginning in February of 2001, counselors from Brighton Allston clinical services counseled Juan P. weekly at Brighton H.S.
On May 11, 2001, the school police responded to a call from Brighton H.S. Headmaster Charles Skidmore (“Headmaster Skidmore”). The call reported that, between May 9 and 10, 2001, a female student told a Brighton H.S. teacher that Juan P. made several statements regarding his intent (1) to disrupt the senior prom by putting laxatives in the punch and (2) to “pay back” students who have harassed and mocked him at the graduation ceremony’s conclusion (collectively, the “First Threat”). Additionally, Special Education Program Director Margaret Judges (“Director Judges”) indicated that a teacher and another student overheard Juan P. talking about a “list” of people whom he wanted to “pay back.”
The school police spoke with Headmaster Skidmore and then escorted Juan P. to the special education office, where school staff and the Boston police questioned him. Juan P. insisted that his comments were meant as a joke. When the staff asked whether he had put a “list” in writing, he responded that “he didn’t need to, that he had it in his mind.” He also disclosed the existence of a “book” he had written and shown to other students at Brighton H.S. Juan P. was read his Miranda rights and then asked to produce the “book.” He removed from his backpack five chapters of a violent story, comprising approximately 100 pages of print. He consented to the copying of his “book.”
At this point, the Brighton H.S. pupil services coordinator called Allston Brighton Mental Health clinician David Drucker (“Drucker”) and asked that he evaluate Juan P.’s dangerousness. Drucker found that the boy did not intend to harm anyone. He reported that Juan P. “appear[s] to harbor anger toward some students and possesses very prejudiced views” and he “may be expressing anger through stories of violence which [Juan P.] maintains are fictional.” Brighton H.S. staff members restricted Juan P. to the school’s study center for the remainder of the day and instructed him to return with his mother on May 14, 2001.
On May 14th, Brighton H.S. staff members, Juan P., and his mother met and discussed the inappropriate nature of his comments. They then reviewed the academic requirements the student needed to satisfy in order to graduate. The staff members concluded that Juan P. had a clear understanding of the gravity of his statements and decided not to take disciplinary action in response to this First Threat. Despite the school’s decision, the Boston Police filed criminal charges against Juan P. in the Brighton District Court.
Two days later, on May 16, 2001, a Brighton H.S. teacher read a student’s memory book, which contained a note written by Juan P. stating, in relevant part, “I still plan to get my pay back and blow up the school” (the “Second Threat”). Brighton H.S. staff members questioned Juan P., at which time he admitted to writing the note. He claimed that he had written the note in April of2001 but had not given the memory book back to its owner until May 14, 2001. He also claimed that he meant the note as a joke. The school police obtained a copy of the note, and the officers and staff members questioned him further. Juan P. again stated that he meant the note as a joke and that he wrote it before he had returned the memory book to the student.
Juan P. submitted to another mental health evaluation by a Brighton Allston Mental Health clinician. That clinician determined that an intervention was not warranted. Juan P. remained in the learning center for the balance of that day. A suspension hearing was held the following day.
B. Procedural History
On May 17, 2001, the school police, Dr. Beckford (the head of student support services), Headmaster Skidmore, Director Judges, Juan P., and his mother attended the suspension hearing. At the meeting, Brighton H.S. staff members discussed the seriousness of the offenses and the disciplinary options available to them. The code of discipline section of the Policy Handbook for Parents and Students for the 2000-01 school year (the “Handbook”) detailed, inter alia, examples of offenses for which a school may discipline a student. It provided that a school may suspend or expel a student for harming or threatening to harm another person. Both Juan P. and his mother knew of the Handbook.
During the meeting, some in attendance also discussed the graduation requirements and expressed concern over enabling Juan P. to complete his work in the remaining three weeks and earn his diploma. The hearing concluded with the decision to suspend Juan P. for five days. It further was recommended that he be excluded from the school’s prom and graduation ceremony. Headmaster Skidmore, Juan P., and his mother each signed a document indicating that they understood the recommendations resulting from the meeting. An expulsion hearing was scheduled for the following day.
On May 18, 2001, Brighton H.S. held an expulsion hearing during which both the school and Juan P. presented evidence. Juan P.’s entire Team was present at that hearing, during which it was decided that Brighton H.S. would suspend the boy for the five days previously decided and exclude him from attending the school’s prom and graduation ceremony. The disciplinary action permitted Juan P. to complete his course work and to receive his diploma, albeit not at the actual ceremony.
*84 After the expulsion hearing, the Team conducted a hearing to determine whether Juan P.’s actions occurred as a manifestation of his disability. The Team found that they had, a conclusion disputed by Juan P. and his mother.
On May 29, 2001, after both the expulsion and the manifestation determination hearings had taken place, Headmaster Skidmore rendered his decision in this matter. Headmaster Skidmore elected not to expel Juan P.; however, he did determine that the Second Threat warranted suspending Juan P., mandating counseling and tutoring, and excluding him from Brighton H.S.’s prom and graduation ceremony. In deciding to exclude Juan P. from attending the graduation ceremony, Headmaster Skidmore testified that he considered all reports made in connection with the threats, the safety of other students, and a prior incident involving a “standoff’ between Juan P. and a Brighton H.S. teacher. Headmaster Skidmore feared for the safety of Juan P. and others should Juan P. attend the ceremony.
By agreement, Juan P. received home tutoring services through the end of the school year. He successfully completed an intervention counseling program and all academic requirements and earned his diploma.
On June 8,2001, seeking an order allowing her son to attend Brighton H.S.’s June 14, 2001, graduation ceremony, Juan P.’s mother filed a request for an expedited hearing with the Bureau. On June 12,2001, Boston Public received notice of the request and learned that the Bureau had scheduled the hearing for the following morning.
On June 13, 2001, the Bureau held a hearing during which both parties offered exhibits into evidence and presented witness. After hearing the evidence, the hearing officer expressed concern about the “lack of evidence” bearing on the question of Juan P.’s present dangerousness. The hearing officer requested that the student submit to an emergency psychiatric evaluation, and Juan P. agreed. On June 14, 2001, a psychiatrist from Beth Israel Deaconess Medical Center evaluated Juan P. and concluded that he did not appear to be at immediate risk for harm to himself or others necessitating involuntary commitment to a psychiatric facility.
On June 14, 2001, the Bureau issued its finding that Boston Public failed to present “sufficient evidence” supporting its claim that Juan P. was a danger to himself or others, thereby warranting his exclusion from the graduation ceremony. It also determined that Boston Public violated the student’s procedural due process rights. The Bureau then ordered Boston Public to allow Juan P. to attend the school’s graduation ceremony and to provide for the safety of Juan P. and others in attendance. Boston Public complied with the order, and Juan P. attended the ceremony without incident.
The plaintiff appealed the Bureau’s decision to this court pursuant to G.L.c. 30A. The plaintiff contends that the Bureau erred as a matter of law when it concluded that Boston Public violated Juan P.’s due process rights. The Bureau responds that substantial evidence supports its decision and that this court should not disturb its ruling. Both parties have moved this court for judgment on the pleadings pursuant to Mass.R.Civ.P. 12(c) and Superior Court Modified Standing Order 1-96(4).
Standard of Review
The Massachusetts Administrative Procedure Act confines judicial review of an agency decision to the administrative record. G.L.c. 30A, §§14(4), 14(5); Cohen v. Board of Registration in Pharmacy, 350 Mass. 246, 253 (1966). When reviewing an agency decision, the court must give due weight to the agency’s experience, technical competence, specialized knowledge, and statutorily conferred discretion. G.L.c. 30A, §14(7); Flint v. Commissioner of Pub. Welfare, 412 Mass. 416, 420 (1992); Bartlett v. Contributory Ret. Appeal Bd., 6 Mass.App.Ct. 948, 949 (1978). Further, the party appealing an administrative decision bears the burden of demonstrating that the decision is invalid. Merisme v. Board of App. on Motor Vehicle Liab. Policies & Bonds, 27 Mass.App.Ct. 470, 474 (1989).
Upon judicial review under G.L.c. 30A, a court may set aside an agency’s decision only if that decision is unsupported by substantial evidence or based upon error of law. Bagley v. Contributory Ret. Appeal Bd., 397 Mass. 255, 258 (1986); Retirement Bd. of Brookline v. Contributory Ret. Appeal Bd., 33 Mass.App.Ct. 478, rev. den., 414 Mass. 1101 (1992); Robinson v. Contributory Ret. Appeal Bd., 20 Mass.App.Ct. 634, 636, rev. den., 396 Mass. 1102 (1985). Because a court is not bound by errors of law, the court subjects to independent review the conclusions of law drawn from an agency’s findings of fact. Capezzuto v. State Ballot Law Comm’n, 407 Mass. 949, 952 (1990).
Superior Court Standing Order 1-96(4) provides that a motion for judgment on the pleadings, brought pursuant to Mass.R.Civ.P. 12(c), is the proper method to resolve an action for judicial review of an administrative decision.
Discussion
A. Mootness
Before reaching the merits of a case, a court must determine whether that case presents “a live issue for adjudication.” Metros v. Secretary of the Commonwealth, 396 Mass. 156, 159 (1985). As a general rule, a court will decide a case only if it involves actual controversies, id.; and, thus, a party generally lacks standing to bring a moot claim, Sinner Friedlander Corp. v. State Lottery Comm’n, 423, Mass. 562, 563 (1996). Of course, exceptions to that general rule exist. In particular, where the case involves an issue “capable of repetition, yet evading review,” a court may hear an otherwise moot case. Metros, 396 Mass. at 159, *85 quoting from Southern Pac. Terminal Co. v. Interstate Commerce Comm’n, 219 U.S. 498, 515 (1911).
In this matter, the Bureau correctly notes that the specific question underlying this action — whether Boston Public may exclude Juan P. from attending Brighton H.S.’s graduation ceremony as discipline for making the Second Threat — is technically moot. The ceremony occurred uneventfully on June 14, 2001; and Juan P. attended it. Under general principles of mootness, this court should not hear the case. However, the plaintiff argues that this case warrants review by this court because it presents a general issue capable of repetition, yet evading review. This court agrees with the plaintiff.
An issue is “capable of repetition yet evading review” where (1) it concerns an issue of public importance, (2) both sides fully argued the matter, (3) it is certain or very likely that the question will arise again in similar factual circumstances, and (4) appellate review could not be obtained before the recurring question would again be moot. Lockhart v. Attorney Gen., 390 Mass. 780, 783 (1984), and cases cited therein. Necessarily, the plaintiff must demonstrate that the general issue presented by this case — whether a school district may exclude a student from attending a school’s graduation ceremony for reasons relating to discipline and safety — satisfies each of these factors. The instant plaintiff has sustained its burden.
The plaintiff directed this court to the case of Dolinger v. Driver, 498 S.E.2d 252 (Ga. 1998), which addressed an issue similar to the one in the present case. In Dolinger, students sought the right to march with their fellow students in the school’s graduation ceremony despite discrepancies in their records which revealed that they did not have the required course credits qualifying them to receive a high school diploma. Less than forty-eight hours before the graduation ceremony was to have commenced, the trial court entered an order enabling the students to participate in that ceremony. The students attended the ceremony; and, thereafter, the school board appealed.
The Supreme Court of Georgia, presented with the issue of mootness, concluded that the appeal did not become moot simply because the students attended the graduation ceremony. Id. at 254. The court explained that the issue on appeal was of public importance and capable of repetition yet evading review. Id. It continued that “(a]s a practical matter, cases of this type invariably will be brought at the eleventh hour when immediate appellate review will be impossible.” Id. Accordingly, that court decided to hear the school board’s appeal.
Similar to the issue in Dolinger, the issue in this case is capable of repetition, yet evading review. The Bureau’s decision-making power is an issue of public importance, and students invariably will challenge the Bureau’s decision to exclude them from attending a graduation ceremony at the “eleventh hour when immediate appellate review will be impossible.” Furthermore, it is certain or, at least, very likely that, in the future, students will challenge a decision to exclude them from a school’s graduation ceremony for reasons relating to discipline or safety. Finally, both Boston Public and Juan P. fully argued their cases before the Bureau, with each presenting multiple exhibits and witness testimony.
This court is satisfied that this case presents an issue capable of repetition yet evading review. Consequently, the plaintiff has standing to bring this case; and this court will decide the matter.
B. Due Process Claim
Having determined that the plaintiff has standing to bring this action, the crux of this court’s inquiry now focuses on whether the Bureau erred as a matter of law when it determined that Juan P. had a right to attend Brighton H.S.’s graduation ceremony. The plaintiff contends that, because students do not have a protected property interest in attending a graduation ceremony, the decision to exclude Juan P. did not require compliance with procedural due process and was within the school’s discretion. This court agrees.
It is well settled that the United States Constitution provides procedural protection to an individual who is deprived of a property interest. U.S. Const., Art. XIV; Board of Curators of University of Missouri v. Horowitz, 435 U.S. 78 (1978). A person has a property interest in a public school education as provided by each individual state’s law. Goss v. Lopez, 419 U.S. 565, 572-73 (1975); Allen v. Board of Assessors of Granby, 387 Mass. 117, 120 (1982). The laws of Massachusetts entitle every person to have access to a public education. G.L.c. 76, §1. Thus, Juan P. had a protected property interest in receiving a public education. Certainly, had he been denied the ability to earn his diploma, due process protections would obtain. However, this court is not faced with such a challenge.
Rather, the paramount question which remains here concerns whether a student, such as Juan P., has a similarly protected property interest in attending a graduation ceremony to receive a diploma he has earned. While no Massachusetts court has directly addressed this question, courts in other jurisdiction have; and those cases provide considerable guidance to this court.
In each case, the court determined that students do not have a property right in attending a graduation ceremony. See, generally, Fowler v. Williamson, 448 F.Sup. 497 (W.D.N.C. 1978) (declaring that student’s expectation of participation in graduation ceremony did not rise to level of property right); Valentine v. Independent Sch. Dist. of Casey, 183 N.W. 434 (Iowa 1921) (explaining that while school board could not withhold diplomas, it could deny participation in graduation ceremony because no property right existed); Mifflin County Sch. Dist. v. Stewart, 503 A.2d 1012 (Pa. *86 1986) (explaining that student had no property right in graduation ceremony because such ceremony is only symbolic of education’s end result). Cf. Smith v. North Babylon Union Free Sch. Dist., 844 F.2d 90, 94 (2nd Cir. 1988) (finding that because graduation ceremony is not a prerequisite to student’s receipt of diploma, no constitutional infringement of right inured from excluding participation in mere “social occasion”). This case compels an identical conclusion.
Without doubt, Juan P. had a right to a public education; and the parties here took care to ensure that he had a meaningful opportunity to earn his diploma. However, he enjoyed no equivalent right to receive that diploma at a graduation ceremony. A graduation ceremony serves as a symbolic conclusion to the education process, but attendance at the ceremony is not a prerequisite to receiving the diploma. Refusing Juan P. access to the ceremony did not serve to deny him a public education. As a result, he had no protected property interest in attending the ceremony; and it was within Boston Public’s discretion to prohibit him from attending it as discipline for making the Second Threat. Cf. Swany v. San Ramon Valley Unified Sch. Dist., 720 F.Supp. 764, 774 (explaining that, even if student had satisfied all prerequisites necessary permitting him to graduate, “attendance at that event was not a protected property right, requiring procedural due process before permission to participate could be withheld”).
The Bureau strenuously argued that this court should not disturb its finding because it was supported by substantial evidence. However, the Bureau’s position presupposes that students generally have a protected interest in attending their graduation ceremony and that, in this case, the Bureau had the obligation of determining whether Boston Public had cause and complied with due process before it excluded Juan P. from the graduation ceremony. That assumption does not follow from the court’s review of relevant case law. Therefore, because the Bureau based its decision on a faulty premise, this court does not reach the question of whether the Bureau’s decision was supported by substantial evidence.
The plaintiff has sustained its burden under G.L.c. 30A, § 14 of showing that the Bureau erred as a matter of law in finding that Juan P. had a protected property interest in attending Brighton H.S.’s graduation ceremony. This court is not bound by the Bureau’s error of law. Accordingly, judgment in favor of the plaintiff and against the Bureau is warranted.
ORDER
For all the foregoing reasons, it is ORDERED AND ADJUDGED that the plaintiff Ciiy of Boston’s motion for judgment on the pleadings be ALLOWED; that defendant Bureau of Special Education Appeals’ motion for judgment on the pleadings be DENIED; and that the decision of the Bureau of Special Education Appeals be VACATED.

 A ‘Team” consists of individuals knowledgeable about the student, the meaning of the evaluation data, and the placement options. 34 C.F.R. 300.344; 603 C.M.R. 28.02(22). The members may include the student, if appropriate; the student’s parents; at least one of the student’s teachers; an evaluator or service provider; and the Special Education coordinator. Id.