NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

18-P-483                                        Appeals Court

ROCCO VIGORITO  vs.  CITY OF CHELSEA.

No. 18-P-483.

Suffolk.     February 8, 2019. - May 9, 2019.

Present:  Green, C.J., Agnes, & Desmond, JJ.


Municipal Corporations, Demolition of burnt or dangerous
     building.  Damages, Demolition of building.  Practice,
     Civil, Motion to dismiss, Moot case, Amendment of
     complaint.  Moot Question.


     Civil action commenced in the Superior Court Department on
August 22, 2016.

     A motion to dismiss was heard by Heidi E. Brieger, J., and
a motion to amend the complaint was heard by her.


     Peter G. Calabrese for the plaintiff.
     Peter A. Brown (Andrew G. Fanno also present) for the
defendant.


     AGNES, J.  This appeal arises out of actions taken by the

defendant, the city of Chelsea (city), to order the demolition

of a dangerous and unsafe building.  General Laws c. 143, § 6,

requires local building inspectors to inspect any unsafe

structure that is reported to them or of which they become

aware, and to notify property owners of steps they must take "to remove [the structure] or make it safe." If an owner fails to respond to proper notice within the required timeframe, the municipality is authorized to demolish the unsafe structure. G. L. c. 143, §§ 7 & 9.[1]

In the case before us, the plaintiff, Rocco Vigorito, to whom the relevant property had been sold after demolition had been ordered, appeals from a Superior Court judgment entered after the allowance of the city's motion to dismiss under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), and the denial of Vigorito's cross motion for leave to file a supplemental verified complaint. For the following reasons, we affirm.

Background. The structure involved in this case is an abandoned and deteriorating former gas station located at 553-A Washington Avenue, Chelsea. On September 17, 2015, the city issued an order to demolish or make safe, pursuant to G. L. c. 143, § 6, to seven "Owner(s)/Potential Interested Parties"

---

[1] General Laws c. 143, § 10, in conjunction with G. L. c. 139, § 2, provide remedies for an aggrieved owner who may seek judicial review in the Superior Court, including the right to a trial by jury. If review is sought in a timely manner, the jury may affirm, annul, or alter the order of demolition. If the order is annulled, the jury may award monetary damages and costs to the aggrieved party. G. L. c. 139, § 2, and G. L. c. 143, § 10.

(the estate), the then-owners of the property.[2]  No notice was sent to Vigorito, who did not have an ownership interest in the property at that time.  Approximately nine months later, on or around June 9, 2016, the estate entered into a purchase and sale agreement with Vigorito for the conveyance of the property, including the former gas station.  On August 4, 2016, the estate conveyed the property to Vigorito by deed, which was recorded in the Suffolk Registry of Deeds on August 8.

Meanwhile, on or about August 8, 2016, the estate brought an action to enjoin the city's demolition of the structure, believing it would interfere with the impending sale to Vigorito (who was not a party to that action).  That action was dismissed with prejudice by stipulation on or around August 15.  On August 18, 2016, the city served Vigorito with a copy of the September 2015 notice to demolish.

Vigorito filed this action in Superior Court on August 22, 2016.[3]  He also filed a motion for an ex parte temporary

---

[2] The city subsequently issued, on October 9, 2015, a board of survey report to the same seven parties, specifically enumerating the physical deficiencies of the structure.

[3] Vigorito's verified complaint contained four counts and sought relief "annulling any and all prior orders, notices, and findings relied on by [the city] in pursuing demolition of the structure at the Property . . . [and] enjoining [the City] from taking any action consistent with demolition of the structure at the Property for the duration of this action."  It did not seek monetary damages.

restraining order on August 22 and an emergency motion for injunctive relief on August 23. Both motions were denied following a hearing on August 24, and the city demolished the structure the following day. Vigorito took no additional action. Nearly eleven months later, on July 11, 2017, the city filed a motion to dismiss for failure to state a claim upon which relief could be granted, arguing that Vigorito's claims were rendered moot with the demolition of the structure.[4] Vigorito then filed a cross motion for leave to file a supplemental verified complaint on July 14, 2017, adding new claims for relief including, for the first time, a claim for monetary relief. Following a hearing on September 28, 2017, the judge allowed the city's motion to dismiss, denied Vigorito's motion for leave to file a supplemental verified complaint, and dismissed his verified complaint on October 4, 2017.

---

[4] Although we believe that the Superior Court did not have jurisdiction to entertain Vigorito's complaint after the structure had been demolished and the controversy had consequently become moot, we nonetheless choose to reach certain issues that have been fully briefed and argued in the exercise of our discretion because appellate case law construing the statutes involved in this case is sparse, the issues relate to important public safety concerns, and cases like the one before us are "capable of repetition, yet evad[e] review." Metros v. Secretary of the Commonwealth, 396 Mass. 156, 159 (1985), quoting Southern Pac. Terminal Co. v. ICC, 219 U.S. 498, 515 (1911). Moreover, Vigorito's appeal from the denial of his motion to file a supplemental verified complaint is not moot.

Discussion. On appeal, Vigorito argues that the judge erred in dismissing his verified complaint. In reviewing a decision dismissing a complaint under rule 12 (b) (6), we accept all allegations as true, and draw all reasonable inferences in the plaintiff's favor. See, e.g., Blank v. Chelmsford Ob/Gyn, P.C., 420 Mass. 404, 407 (1995). To survive a motion to dismiss, the factual allegations must plausibly suggest an entitlement to relief. See Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007).

Nothing in the controlling statutory framework requires the city to re-serve subsequent property owners with an order of demolition. The provisions of G. L. c. 139 and c. 143 establish the predeprivation and postdeprivation process required in the condemnation and demolition of a building. See Gallant v. Fitchburg, 739 F. Supp. 2d 39, 41-42 (D. Mass. 2010) (describing statutory framework under G. L. c. 143). Section 10 of G. L. c. 143, allows an owner aggrieved by an order to remove a dangerous structure to obtain judicial review of the order. See G. L. c. 139, § 2. Under § 2, "[t]he owner must commence a civil action in superior court within three days after the service of the challenged order." South Commons Condominium Ass'n v. Springfield, 967 F. Supp. 2d 457, 461 (D. Mass. 2013). Under §2, the owner is entitled to a jury trial and if the order

of demolition is annulled, the owner is entitled to "recover from the town his damages, if any, and costs."  G. L. c. 139, § 2.[5]  Here, the estate, when served with the city's demolition order in September 2015, did not challenge the order within the timeframe set forth in § 2.[6,7]

---

[5] See G. L. c. 143, § 6 (providing that local inspector "shall forthwith in writing notify the owner . . . to remove [the unsafe structure]").

[6] Although we consider only the allegations in the complaint for purposes of assessing the order on the defendant's motion to dismiss, we note that the record indicates that Vigorito took possession of the property with actual notice of the impending demolition given his knowledge of the estate's civil action to enjoin the demolition and its eventual dismissal with prejudice. Apart from the allegations in the verified complaint, the record contains additional evidence indicating that Vigorito was put on notice of the impending demolition even though he was not served the notice of demolition until mid-August.  Both the city solicitor in the estate's case and the city's attorney in this appeal submitted affidavits attesting that they, and other city officials, informed Vigorito (and his attorney) prior to his purchase of the property of the operative status of the demolition order, steps the city was actively taking to prepare for the demolition, and the fact that the purchase of the property by Vigorito or any other third party would not impact the scheduled demolition.  See G. L. c. 143, § 10 ("no provision of [G. L. c. 139, § 2] shall be construed so as to hinder, delay or prevent the local inspector acting and proceeding under section nine").

[7] Ordinarily, when a party is served with notice that a demolition order has issued, the party must file a civil action in Superior Court within three days of service and may request both equitable relief and monetary damages as provided by G. L. c. 139, § 2.  A complaint seeking only equitable relief could be regarded as a waiver of the right to request monetary damages.
General Laws c. 143, § 7, authorizes the city to immediately demolish any structure deemed unsafe pursuant to the provisions of G. L. c. 143, § 6 "if the public safety so requires."  In such circumstances, as here, "where an owner

There is an additional reason not to disturb the judgment. "[L]itigation is considered moot when the party who claimed to be aggrieved ceases to have a personal stake in its outcome." Blake v. Massachusetts Parole Bd., 369 Mass. 701, 703 (1976). Each of the counts within the verified complaint "is directed solely to the prevention of the Defendant's demotion [sic] of Plaintiff's building." Vigorito did not seek further relief until almost eleven months after the demolition when he filed his motion for leave to file a supplemental verified complaint. Thus, this case is moot because the structure at issue has been demolished.

Finally, Vigorito argues that the judge erred in denying his motion to file a supplemental verified complaint. We review such determinations for an abuse of discretion and "whether adequate reason for the denial . . . is apparent in the record." Castellucci v. United States Fid. & Guar. Co., 372 Mass. 288, 290 (1977). Here, the record shows that Vigorito waited to file his motion until three days after the city filed its motion to dismiss, having made no effort otherwise to resolve the matter

---

desires to challenge . . . the immediate demolition of a structure deemed hazardous to public safety, or the liens for the costs of demolition," such owner must commence a civil action in Superior Court to seek relief. South Commons Condominium Ass'n, 967 F. Supp. 2d at 461. If the owner succeeds in such challenge after a jury trial, the sole remedy available to him is compensation in the form of damages and costs. Id.

during the intervening months and providing no sufficient reason for the undue delay.[8]  See DiVenuti v. Reardon, 37 Mass. App. Ct. 73, 77 (1994) ("Among the good reasons, however, for which a motion to amend may be denied are that no justification for the lateness of the motion is apparent [beyond counsel for the moving party having had a late dawning idea] and that one or more of the nonmoving parties would be caught off balance by the proffered amendment").  The judge, in denying Vigorito's motion, reasoned that, during the ensuing months following the denial of injunctive relief and the subsequent demolition of the building, the plaintiff failed to prosecute his case in any manner.  In these circumstances, the judge did not abuse her discretion in denying Vigorito's motion for leave to file a supplemental complaint.[9]

---

[8] Vigorito attempts to justify the delay by pointing to his pursuit of three building permits for the property following the demolition.  He appealed the denial of those permits to the city's zoning board of appeal, arguing that that was a necessary preliminary step to assess his damages for purposes of this appeal.  However, he does not argue that his damages did not accrue until the permit applications were denied, or that, until those denials, he was unclear whether his damages were of sufficient magnitude to make the claims worth pursuing.  Thus, the judge did not abuse her discretion in rejecting Vigorito's proffered reasons for the delay.  For these reasons, the judge did not fail to consider any relevant factor that was necessary to the appropriate exercise of her discretion.  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

[9] When inquiry was made at oral argument, counsel for the city stated that he intended his general request for costs in his brief to encompass a request for appellate attorney's fees.

Judgment affirmed.

---

That general request was insufficient as a request for appellate attorney's fees must be specifically set forth in the requesting party's brief. Beal Bank, SSB v. Eurich, 448 Mass. 9, 11 (2006). Beal Bank identified two purposes for the requirement, one of which is relevant here:  to "notify[] the opposing party that the requesting party is seeking fees and giv[e] the opposing party an opportunity to respond." Id.  This purpose would be thwarted if we were to entertain the request here when it was not made in the brief.  Although the court has discretion to award appellate fees in the absence of a request in the brief, see Haser v. Wright, 65 Mass. App. Ct. 903, 904 n.3 (2005), we decline to exercise that discretion here.